UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY BOGAN,

    Plaintiff,

v.                                                                            Case No: 8:16-cv-2373-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Anthony Bogan, seeks judicial review of the denial of his claim for supplemental security income. As the hearing before the Administrative Law Judge ("ALJ") violated Plaintiff's procedural due process rights, the decision is reversed and remanded for further proceedings.

## **BACKGROUND**

### **A.    Procedural Background**

Plaintiff received supplemental security income based on disability as a child. (Tr. 14.) As required by the 42 U.S.C. § 1382c(a)(3)(H)(iii), the Commissioner reevaluated Plaintiff's disability once he attained the age of 18 by applying the criteria used in determining initial eligibility for individuals over the age of 18. On November 9, 2012, the Commissioner determined that Plaintiff was no longer disabled as of that date. (Tr. 14, 50–54.) Plaintiff then requested an administrative hearing. (Tr. 84.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 28–43.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 11–23.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied. (Tr. 1–4.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1994, claimed disability beginning on July 25, 2001. (Tr. 155.) Plaintiff has a limited education. (Tr. 158.) Plaintiff has no past relevant work experience. (Tr. 158–159.) Plaintiff alleged disability due to a learning disability and behavioral problems. (Tr. 158.)

In rendering the decision, the ALJ concluded that Plaintiff was no longer disabled as of November 9, 2012. (Tr. 14.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: a learning disorder, a conduct disorder, and a depressive disorder. (Tr. 16.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that Plaintiff is limited to unskilled work consisting of simple, repetitive, and routine tasks with occasional interaction with the public. (Tr. 19.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 21.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work. (Tr. 21.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a kitchen helper, packager, and

commercial cleaner. (Tr. 22.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 22.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a).

A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to advise Plaintiff of his right to representation; (2) the ALJ failed to fully develop the record; and

(3) the ALJ failed to provide Plaintiff a full and fair hearing. For the reasons that follow, Plaintiff's third contention warrants reversal.

### A. Plaintiff's Right to Representation and the ALJ's Development of the Record

Plaintiff argues that the ALJ failed to fulfill his duty to explain to Plaintiff his right to representation. (Dkt. 20 at 7.) Specifically, Plaintiff argues that it was apparent that Plaintiff did not understand his options concerning representation or knowingly waive his right to counsel. (Dkt. 20 at 7.) In support of his argument, Plaintiff relies on his answers to the ALJ's questions regarding his representation at the hearing. For example, when the ALJ asked Plaintiff if he had a lawyer, Plaintiff responded that his grandmother was outside. (Tr. 30.)

Pursuant to 42 U.S.C. § 406, the Commissioner of Social Security is required to "notify each claimant in writing . . . of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c). The Eleventh Circuit has recognized that "[a] Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Where a claimant has not been adequately informed of her statutory right, however, her waiver is not "knowingly and intelligently" made. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). "The deprivation of the statutory right to counsel at a Social Security hearing is a statutory wrong, not a constitutional wrong." *Graham*, 129 F.3d at 1422.

Here, prior to the administrative hearing, the Commissioner sent Plaintiff a letter in July 2013 stating that had a right to representation. (Tr. 85–87.) The letter explained that any representative may only receive a fee if the Commissioner approves the fee agreement and that

many representatives charge a fee only if the claimant receives benefits, while other representatives provide services for free. (Tr. 86.) The Commissioner enclosed a brochure with further information regarding Plaintiff's right to representation, including a list of possible attorneys, organizations that provide free legal services, and non-attorney representatives. (Tr. 88–92.) In September 2014, the ALJ sent Plaintiff a notice of the administrative hearing. (Tr. 98–102.) The letter again notified Plaintiff that he may have a representative help him with his hearing and that the representative may or may not charge a fee. (Tr. 100.)

During the hearing, the ALJ questioned Plaintiff multiple times on whether he wanted an attorney and explained in detail Plaintiff's right to representation. However, upon reviewing the transcript from the hearing, Plaintiff seemed confused by the ALJ's questions concerning representation:

> ALJ: Sir, do you have a lawyer or non-lawyer in this case?
>
> Plaintiff: Huh?
>
> ALJ: Do you have a lawyer?
>
> Plaintiff: My grandmother is outside.
>
> ALJ: Okay. But do you have somebody that represents you, like a lawyer or non-lawyer?
>
> Plaintiff: I don't, I don't have a lawyer. I don't know.
>
> ALJ: You don't have a lawyer?
>
> Plaintiff: No, not that I know of.
>
> ALJ: Okay. Since you're not represented, I'm required to explain to you the right to be represented by an attorney or non-attorney. This person may help you obtain and submit records, explain medical terms, make requests, protect your rights, and present the evidence in light most favorable to your case. A representative may not charge or receive a fee unless we approve it. A representative does not normally get paid unless you're awarded benefits and they

> may accept only 25% of back benefits or $6,000, whichever is less; or the representative may charge you for certain expenses such as obtaining and copying medical records. Some legal service organizations offer free legal representation if you qualify under the rules. This is usually need based. And, of course, you may proceed without representation. Do you understand your right to representation?
>
> Plaintiff: Excuse me?
>
> ALJ: Do you understand you have the right to be represented by an attorney or non-attorney?
>
> Plaintiff: I don't have an attorney.
>
> ALJ: Do you understand you have the right?
>
> Plaintiff: Oh, yes.
>
> ALJ: Do you wish to proceed without an attorney or do you want to get one?
>
> Plaintiff: I don't understand so my grandmother is outside. I don't have an attorney. I said that –
>
> ALJ: I heard you.
>
> Plaintiff: Okay.
>
> ALJ: Do you want a chance to go get an attorney? You can go get an attorney if you want one, or you can just have your hearing today.
>
> Plaintiff: I don't, we can go forward. I don't know.

(Tr. 30–32.) The ALJ then questioned Plaintiff regarding the record and whether Plaintiff had reviewed the record. (Tr. 32.) Plaintiff responded that he had not, but that his grandmother had reviewed the record. (Tr. 32.) The ALJ stated that he would question Plaintiff's grandmother as to whether there was evidence missing from the record. (Tr. 32.) During the ALJ's questioning of Plaintiff, Plaintiff's grandmother remained outside the hearing to "watch the kids." (Tr. 32.)

Based on the above testimony, it appears that Plaintiff did not knowingly and voluntarily waive his right to representation. Although Plaintiff eventually responded in the affirmative when asked whether he desired to proceed without representation, his earlier statements reflect that he wanted the assistance of his grandmother, who was outside the hearing. Plaintiff's testimony does not reflect that he understood or explored his options for representation. Thus, Plaintiff did not waive his right to representation. *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995) (finding plaintiff did not knowingly and voluntarily waive her right to representation, even though she testified that she wanted to proceed without representation, where a review of the hearing testimony demonstrated plaintiff's confusion); *Cowart v. Schweiker*, 662 F.2d 731, 734–35 (11th Cir. 1981) (concluding plaintiff's affirmative response when asked whether she wished to proceed without counsel did not reflect a true desire to do so when viewed in the context of other testimony that she had unsuccessfully attempted to obtain free public assistance and was unable to afford a private attorney).

However, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Brown*, 44 F.3d at 934–35; *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985) (explaining that regardless of whether a claimant waived her right to counsel, the claimant must show prejudice to obtain a remand). Because a hearing before an ALJ is not an adversarial proceeding, the ALJ has a basic obligation to develop a full and fair record. *See Cowart*, 662 F.2d at 735. When the claimant is not represented at the hearing before the ALJ, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and

circumstances are elicited." *Graham*, 129 F.3d at 1423 (internal citations omitted). This standard does not require the court "to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *Id.* (citation omitted). The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or "clear prejudice." *See Brown*, 44 F.3d at 934–35. Prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley*, 761 F.2d at 1540. Nevertheless, the plaintiff bears the burden of proving that he or she is disabled and is responsible for producing evidence to support his or her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).

Plaintiff fails to make an argument regarding any alleged prejudice specifically caused by Plaintiff's lack of representation. However, Plaintiff does claim that the ALJ failed to fully develop the record because he failed to order a consultative examination regarding Plaintiff's psychological difficulties. (Dkt. 20 at 8.) Plaintiff concedes that there are two consultative examination reports in the record performed in October and November 2012. (Dkt. 20 at 9.) Nevertheless, Plaintiff argues that the ALJ should have ordered an updated consultative psychological examination. (Dkt. 20 at 9.) Plaintiff further argues that the ALJ should have asked Plaintiff "if he had seen a psychologist or psychiatrist since October 1, 2012, and obtained those records, if they existed." (Dkt. 20 at 9.)

In response, the Commissioner argues that the ALJ was not required to obtain a consultative examination because the record contained sufficient evidence to allow the ALJ to assess Plaintiff's condition. (Dkt. 21 at 8.) The Court agrees. The ALJ "is not required to order

a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The regulations "may require" a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. 20 C.F.R. § 404.1519a(b).

Here, the record provided the ALJ with sufficient evidence regarding Plaintiff's alleged mental impairments. Specifically, the ALJ considered Plaintiff's school records, including an April 2010 psychological evaluation by Dr. Sheila Deck Spires. (Tr. 19.) Dr. Spires opined that Plaintiff's academic skills were significantly delayed, but that Plaintiff was also frequently absent from school. (Tr. 226.) The ALJ further considered the assessment by state agency psychological consultant Dr. Keith Bauer in October 2012. According to Dr. Bauer, Plaintiff's intelligence quotient ("IQ") scores fell within the "average range" of intellectual functioning and Plaintiff has no severe mental impairments. (Tr. 18, 311.) The ALJ also evaluated the assessment by state agency psychological consultant Dr. Hamlin. (Tr. 18.) In February 2013, Dr. Hamlin reviewed Plaintiff's file and affirmed Dr. Bauer's assessment. (Tr. 325–337.) The ALJ also noted that during the period at issue, the record does not contain any evidence of treatment for a mental condition. (Tr. 20.) At the request of the Commissioner, Dr. Cecilia Yocum performed a consultative psychological examination and administered IQ testing in September 2012. (Tr. 20, 295–298.) Dr. Yocum opined that Plaintiff was oriented to person and place, his mood was irritable, and his behavior was within normal limits. (Tr. 20, 296.) Dr. Yocum further concluded that Plaintiff's long-term memory was difficult to discern and his IQ results were not valid because Plaintiff appeared to be malingering. (Tr. 20, 296–297.) Considering the record before the ALJ and the ALJ's analysis of the same, the ALJ's findings regarding Plaintiff's mental impairments

were based on ample record evidence. Thus, the ALJ was not required to obtain a consultative examination for Plaintiff, and Plaintiff fails to make the necessary showing of prejudice to warrant remand.

With regard to Plaintiff's argument that the ALJ failed to ask whether Plaintiff had seen a psychologist or psychiatrist since October 1, 2012, Plaintiff again fails to make a showing of prejudice. Plaintiff does not explain whether such records demonstrate Plaintiff's impairments or whether the records would have an effect on the ALJ's decision. Further, Plaintiff's statement that the ALJ should have obtained the records "if they existed" implies that such records do not exist. (Dkt. 20 at 9.) Therefore, Plaintiff's contention does not warrant remand.

### B. Plaintiff's Due Process Rights

Plaintiff next contends that his due process rights were violated because he was not given the opportunity to cross-examine the VE or his grandmother, Rowena Harris. (Dkt. 20 at 10.) The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). This includes the ability to cross-examine witnesses. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 269 (1969). As stated above, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Graham*, 129 F.3d at 1423.

During the hearing, the VE answered the ALJ's hypothetical questions after hearing Plaintiff's testimony. The Commissioner argues that the ALJ did not prohibit Plaintiff from asking the VE questions. (Dkt. 21 at 10.) However, in reviewing the hearing testimony, it is unclear whether the ALJ prevented Plaintiff from cross-examining the VE:

> ALJ: What I'm going to do is, I have a couple questions for our VE and then I'll bring your grandmother in and let you go back out. Okay?
>
> Plaintiff: Say that again?
>
> ALJ: I'm going to ask him questions and then I'll let your grandmother come in.
>
> Plaintiff: I don't know him personally.
>
> ALJ: Okay. He's just a vocational expert. He just has, I just need to ask him a couple questions.
>
> Plaintiff: Oh.

(Tr. 36–37.) The ALJ then proceeded to ask the VE hypothetical questions. While the ALJ did not explicitly prohibit Plaintiff from questioning the VE, he did not explain that Plaintiff had the right to cross-examine the VE. As discussed above, Plaintiff was not represented at the hearing. Therefore, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Graham*, 129 F.3d at 1423 (internal citations omitted). Plaintiff did not understand the process of questioning the VE nor his ability to cross-examine the VE, and the ALJ did not apprise him of this right. The ALJ's actions prejudiced Plaintiff's ability to conduct any meaningful cross-examination of the VE. Therefore, Plaintiff's argument warrants remand. *See Cowart*, 662 F.2d at 737 (finding the denial of a claimant's benefits based upon post-hearing medical reports without giving the claimant an opportunity to subpoena and cross-examine the authors of such reports violates due process rights); *Hunter v. Comm'r of Soc. Sec.*, 6:15-cv-1493-ORL-GJK, 2016 WL 4262252 (M.D. Fla. Aug. 12, 2016) (remanding to the Commissioner where the ALJ induced claimant to discontinue cross-examining the VE); *Marin v. Comm'r of Soc. Sec.*,

535 F. Supp. 2d 1263, 1265 (M.D. Fla. 2008) (finding prejudice where ALJ's restriction of claimant's cross-examination of VE prevented claimant from meaningful cross-examination).

With regard to Plaintiff's grandmother, Plaintiff argues that he should have been allowed to remain in the room to listen to Ms. Harris' testimony and that the ALJ should have given Plaintiff the opportunity to question the witness. (Dkt. 20 at 10.) After the VE's testimony, the ALJ instructed Plaintiff to leave the hearing:

> ALJ: Mr. Bogan, what we're going to do is bring your grandmother in now. I want you to go step outside and ask your grandmother to come in. Okay?
>
> Plaintiff: So don't come back with her?
>
> ALJ: No. You don't have to come back with her. We can take care – you can watch the kids while your grandmother comes in and testifies. Okay?
>
> Plaintiff: Watch what kids?
>
> ALJ: I heard there's some kids out there. Let's go off the record.

(Tr. 40.) A discussion was then had off the record, and the ALJ proceeded to question Ms. Harris without Plaintiff present. (Tr. 41–43.) Ms. Harris testified that Plaintiff is not doing well due to his mental impairments. (Tr. 41.) She also stated that Plaintiff was expelled from school due to his behavior. (Tr. 41.) She further testified that Plaintiff has tried to work but cannot "hold a job" because of his attention span and violent tendencies. (Tr. 41–42.) The hearing ended after Ms. Harris' testimony. (Tr. 43.) Thus, Plaintiff was not given an opportunity to question his only witness.

In his decision, the ALJ found Ms. Harris' testimony not credible based on an April 2010 report from a school psychologist. (Tr. 21.) In the report, Plaintiff's mother indicated that Plaintiff is able to read or write and has been sheltered and indulged by the women in the family. (Tr. 21,

225–226.) The report also stated that Plaintiff planned to quit school after turning sixteen. (Tr. 21, 220.)

The Court finds that Plaintiff's due process rights were violated. The ALJ should not have instructed Plaintiff to be absent during Ms. Harris' testimony. Due to his absence, Plaintiff was denied a full and fair hearing as he was not given the opportunity to further inquire into Ms. Harris' testimony. Ms. Harris' testimony was favorable to Plaintiff, and the ALJ found her testimony not credible. (Tr. 21.) Therefore, the ALJ's actions preventing Plaintiff from questioning Ms. Harris were prejudicial, and remand is warranted. *See Cowart*, 662 F.2d at 737; *Hunter*, 6:15-cv-1493-ORL-GJK, 2016 WL 4262252; *Marin*, 535 F. Supp. 2d at 1265.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

2. The Clerk of the Court is directed to enter judgment consistent with this Order.

**DONE** and **ORDERED** in Tampa, Florida, on August 8, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record